UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-14393-CV-CANNON
MAGISTRATE JUDGE REID

JUSTIN W. SETTLE,

      Plaintiff,
v.

OFFICER SCHWARTZ, et al.,

      Defendants.
_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

This Cause is before the Court upon Plaintiff's *pro se* Complaint, filed pursuant to 42 U.S.C. § 1983. *See* [ECF No. 1]. Plaintiff, **Justin W. Settle**, an inmate at Florida State Prison, brings claims against Defendants for deliberate indifference to his medical needs in violation of the Eighth Amendment of the United States Constitution while previously incarcerated at Martin Correctional Institution ("Martin C.I."). *See* [ECF No. 1].[1] He brings this cause of action against Defendants Sergeant Jamel Brown ("Sergeant Brown"), Sergeant Borrow, Correctional Officer Schwartz ("C.O. Schwartz"), Correctional Officer Fanning ("C.O. Fanning), and Nurse Clark. [*Id*. at 1-2].

This case has been referred to the Undersigned for issuance of all preliminary orders and recommendations to the district court regarding dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(B). [ECF No. 7]. Because Plaintiff was a prisoner at the time of filing his Complaint

---

[1] Plaintiff has submitted a seventeen-page filing; however, Plaintiff's filing consists of two identical complaints.

and is proceeding *in forma pauperis* [ECF No. 4], his Complaint must be screened pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A. *See Thompson v. Hicks*, 213 F. App'x 939, 942 (11th Cir. 2007).

Accordingly, as discussed below, the Undersigned **RECOMMENDS** that Plaintiff's Complaint [ECF No. 1] (1) **PROCEED** against Defendants Sergeant Brown, Sergeant Borrow, C.O. Schwartz, and Nurse Clark in their individual capacities for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment; and (2) be **DISMISSED** against C.O. Fanning pursuant to § 1915(e)(2)(B)(ii).

## II. Plaintiff's Allegations

On May 7, 2020, while incarcerated at Martin C.I., Plaintiff broke his right ankle while doing jumping jacks. [ECF No. 1 at 2 ¶ 4]. Plaintiff heard a "loud popping sound and felt an extremely severe pain in his right ankle," and fell to the floor. [*Id*.]. He knew that it was very likely that his "right fibula" was broken because he previously broke his left fibula. [*Id*. ¶ 5].

By the next day, May 8, 2020, Plaintiff's "right foot and leg became so swollen and discolored" that Plaintiff knew his ankle was broken and that he needed immediate medical attention. [*Id*. at 3 ¶ 6]. Accordingly, that morning, Plaintiff began requesting a "medical emergency" from multiple officers and nurses, whose names Plaintiff does not know. [*Id*.]. The officers and nurses ignored Plaintiff's "pleas for help" and most of them ignored his requests for medical attention and pain medication. [*Id*. ¶ 7].

On May 10, 2020, at approximately 10:30 a.m., Sergeant Brown stopped at Plaintiff's cell, D3217, while conducting a security check. [*Id*. ¶ 9]. Plaintiff showed Sergeant Brown his injury and requested a "medical emergency"; however, Sergeant Brown "made some remarks about how swollen Plaintiff's ankle was" and informed Plaintiff that he had something going on but would

2

have him seen by medical after lunch. [*Id*.]. Plaintiff did not see Sergeant Brown after lunch, and in fact, eight days passed until Plaintiff was seen, during which time he experienced "severe chronic pain." [*Id*. ¶ 10].

That same day, May 10, 2020, at approximately 4:00 p.m., after Plaintiff had not been seen by medical and Sergeant Brown had not returned, he stopped C.O. Fanning and showed C.O. Fanning his injury. [*Id*. at 4 ¶ 11]. He explained to C.O. Fanning that Sergeant Brown had promised to get him medical attention but did not do so. [*Id*.]. C.O. Fanning said he would talk to Sergeant Brown and get Plaintiff seen by medical. [*Id*.].

By approximately 5:00 p.m., Plaintiff had still not been seen by medical. [*Id*. ¶ 12]. However, at this time, C.O. Fanning was escorting Nurse Clark, who was distributing afternoon medication. [*Id*.]. When Nurse Clark walked past Plaintiff's cell, Plaintiff said "loud and clear, 'medical emergency[,]'" but Nurse Clark initially ignored him and walked away. [*Id*.]. C.O. Fanning observed Plaintiff attempting to stop Nurse Clark and called him back to Plaintiff's cell. [*Id*. ¶ 13]. Nurse Clark observed Plaintiff's "swollen, discolored lower leg and foot and immediately told C.O. Fanning[,] "now we got to pull him so I can see him in my office." [*Id*.]. Plaintiff claims that Nurse Clark and C.O. Fanning rolled their eyes but told him, "O.K. We'll be back to pull you." [*Id*.]. Plaintiff was not seen by medical that day, and C.O. Fanning's shift ended at 7:00 p.m. [*Id*. ¶ 14]. Nurse Clark also failed to report Plaintiff's injury. [*Id*.].

The next day, May 11, 2020, at approximately 8:00 a.m., while Sergeant Borrow was doing his security check, Plaintiff stopped him and showed him his injury, once again requesting a "medical emergency." [*Id*. at 4-5 ¶ 15]. Plaintiff explained to Sergeant Borrow that based on his symptoms, he knew that his "fibula was broken because he had previously broken his left fibula in 2009." [*Id*. at 5 ¶ 15]. Sergeant Borrow replied, "go to sick call" and began to walk away. [*Id*.].

3

He then asked Sergeant Borrow to get him pain medication, however, Sergeant Borrow wrote something in his notebook and walked away. [*Id*.].

That same day, Plaintiff was able to obtain a sick call request, which he submitted to the nurse on May 12, 2020. [*Id*. ¶ 17]. Over the next few days, Plaintiff continued to request "medical attention and pain medication" from Sergeant Borrow, Sergeant Brown, C.O. Fanning, and multiple unnamed officers and medical staff. [*Id*.]. Only C.O. Fanning provided Plaintiff with pain medication, two tablets of "200 mg ibuprofen." [*Id*.].

A few days later, on May 15, 2020, during showers, Plaintiff told C.O. Schwartz that he had a "broken bone in his leg and needed medical attention." [*Id*. ¶ 18]. After C.O. Schwartz observed Plaintiff's injury, he told him he would get him medical attention after showers, however, Plaintiff received none. [*Id*.]. Then, on May 17, 2020, at approximately 6:00 a.m., C.O. Schwartz stopped at Plaintiff's cell, and Plaintiff again requested medical attention. [*Id*. ¶ 19]. C.O. Schwartz told Plaintiff that he did not have the time because his shift ended at 7:00 a.m., but that he would get Plaintiff medical attention when he returned to work that evening. [*Id*. at 5-6 ¶ 19].

That same evening, at approximately 7:30 p.m., while C.O. Schwartz was doing his initial security check, Plaintiff stopped him and once again requested medical attention. [*Id*. at 6 ¶ 20]. At this time, C.O. Schwarz "observed a string (a.k.a. 'fishing line') running from Plaintiff's cell (D3217) to the cell next to [him] (D3218)." [*Id*.]. Plaintiff claims he was forced to use the string to obtain pain medication from the inmate in the cell next to him. [*Id*.]. C.O. Schwartz pulled the string out of both cells and said, "You want me to get you to medical when you are fishing." [*Id*.]. Plaintiff tried to explain that he needed the medication and could not get any of the officers or staff to give him any. [*Id*]. C.O. Schwartz replied, "Yeah but fishing's against the rules." [*Id*.]. Plaintiff told C.O. Schwartz that if he cared, he would get him some help, but C.O. Schwartz walked off

4

and never provided Plaintiff with any medical attention. [*Id*. ¶¶ 20-21]. Plaintiff claims that C.O. Schwartz's withholding of medical care, without any hearing, violated his right to "due process of the law." [*Id*. ¶ 21].

On May 18, 2020, approximately eleven days after Plaintiff's injury, after an unknown nurse passed by his cell, Plaintiff declared another medical emergency. [*Id*. ¶ 22]. He was finally seen by physician Smith, who determined that his injury was a "medical emergency" and provided him with "pain medication and an Ace wrap." [*Id*.]. Plaintiff then had an X-ray performed on May 20, 2020, and the results showed that he did suffer a "fractured right fibula." [*Id*. at 7 ¶ 23]. On May 28, 2020, "a hard cast (boot) was placed on Plaintiff's right lower leg and a higher dose of pain medication was prescribed to [him] (600 mg ibuprofen)." [*Id*. ¶ 24].

As for relief requested, Plaintiff seeks "compensatory" and "punitive damages." [*Id*. at 7].

### III. Standard of Review- 28 U.S.C. §1915(e)

To state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *See Griffin v. City of Opa Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) (citation omitted). Under both 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A, a complaint must be dismissed if the Court determines that the complaint fails to state a claim upon which relief can be granted. *See Wright v. Miranda*, 740 F. App'x 692, 694 (11th Cir. 2018). When reviewing a complaint, the Court takes the allegations made as true. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).

The same standard is used for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and § 1915(e)(2)(B)(ii). *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Thus, the Court may dismiss a complaint that fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In order to "avoid dismissal for failure to state a claim, a complaint must contain factual allegations that, when accepted as true, allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Wright*, 740 F. App'x at 694 (citing *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017)) (per curiam). Although, as stated before, a *pro se* pleading is liberally construed, it still must "suggest that there is some factual support for a claim." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Further, under section 1915(e)(2)(B)(ii), courts must dismiss as frivolous claims that are "based on an indisputably meritless legal theory . . ." or "whose factual contentions are clearly baseless." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

## IV. Discussion

1) <u>Legal Standard: Deliberate Indifference to Medical Needs</u>

Because Plaintiff was a convicted prisoner at the time of the alleged incidents, his claims are governed by the Eighth Amendment to the U.S. Constitution. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986). The Eighth Amendment prohibits any punishment which violates civilized standards of decency or involves "the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *see also Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999). Accordingly, the Supreme Court has interpreted the Eighth Amendment to prohibit "deliberate indifference to serious medical needs of prisoners." *Id.* at 103.

To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate: (1) a serious medical need; (2) a showing that the prison official acted with deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 1307 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (1994)), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002). To establish that a prison official acted with deliberate indifference to a serious medical need, a plaintiff must show three facts as follows: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Mitchell v. Nobles*, 873 F.3d 869, 876 (11th Cir. 2016) (citing *McElligot v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)).

"An official disregards a serious risk by more than mere negligence 'when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate.'" *Nam Dang v. Sherriff, Seminole Cnty. of Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (quoting *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1425 (11th Cir. 1997), *overruled on other grounds by LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009) (alteration in original)). The defendant's conduct must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 1280 (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)); *see also Hines v. Parker*, 725 F. App'x 801, 805 (11th Cir. 2018).

Lastly, for a plaintiff to prevail on a deliberate indifference claim, a plaintiff must demonstrate a causal connection between defendant's alleged deliberate indifference and

7

plaintiff's injury. *See Harris v. Prison Health Servs.*, 706 F. App'x 945, 953 (11th Cir. 2017).

    2) <u>Legal Analysis: Deliberate Indifference to Medical Needs</u>

        A. *Defendants Sergeant Brown, Nurse Clark, Sergeant Borrow & C.O. Schwartz*

Here, Plaintiff has pleaded a plausible claim against Sergeant Brown, Sergeant, Borrow, Nurse Clark, and C.O. Schwartz for deliberate indifference to his medical needs. First, Plaintiff has shown that he had a serious medical need. He asserts that he broke his right ankle on May 7, 2020 and alerted the defendants to his severe pain and swelling. He claims an x-ray performed on May 20, 2020 showed that indeed he had a "fractured right fibula," and yet he received no medical attention until he was x-rayed on May 20 and received a hard cast boot and a prescription for pain medication on May 28. [ECF No. 1 at 2 ¶ 4, 3 ¶ 10, 4 ¶ 14, 5 ¶ 16, 6 ¶ 21].

Plaintiff has shown that these Defendants had subjective knowledge of a risk of serious harm and disregarded that risk by more than mere negligence. *See Mitchell*, 873 F.3d at 876. On May 10, 2020, a few days after Plaintiff's fibula injury, he showed Sergeant Brown his injury and requested a "medical emergency." [ECF No. 1 at 3 ¶ 9]. Sergeant Brown "made some remarks about how swollen Plaintiff's ankle was" and told Plaintiff he would get him medical care after lunch, however, Sergeant Brown never got Plaintiff any medical attention. [*Id*. ¶¶ 9-10]. He again requested medical attention from Sergeant Brown on May 12, 2020. [*Id*. at 5 ¶ 17].

On the same day, May 10, 2020, Plaintiff declared a medical emergency to Nurse Clark, who then observed Plaintiff's 'swollen, discolored lower leg and foot." [*Id*. at 4 ¶ 12-13]. Nurse Clark told Plaintiff that he would be back to take Plaintiff to his office, however, Nurse Clark never returned nor reported Plaintiff's injury. [*Id*. ¶ 13-14]. As for Sergeant Borrow, on May 11, 2020, Plaintiff stopped him and showed him his injury and requested a "medical emergency." [ECF No. 1 at 4-5 ¶ 15]. Plaintiff explained to Sergeant Borrow that based on his symptoms, he knew that

8

his "fibula was broken because he had previously broken his left fibula in 2009." [*Id*. at 5 ¶ 15]. Instead of obtaining medical treatment for Plaintiff, Sergeant Borrow replied "go to sick call" and walked away. [*Id*.]. Plaintiff also requested medical attention from Nurse Clark and Sergeant Borrow on May 12, 2020. [Id. ¶ 17].

Finally, on May 15, 2020, Plaintiff told C.O. Schwartz that he had a "broken bone in his leg and needed medical attention." [*Id*. ¶ 18]. C.O. Schwartz told Plaintiff he would get him medical attention, but Plaintiff never received any that day. [*Id*.]. Then, on the morning of May 17, 2020, Plaintiff once again requested medical attention from C.O. Schwartz, but C.O. Schwartz informed Plaintiff that his shift was ending and that he would get him medical attention when he returned to work that evening. [*Id*. at 5-6 ¶ 19]. However, Plaintiff never received any medical attention from C.O. Schwartz.

In fact, Plaintiff asserts that approximately eight days passed from the time Sergeant Brown and Nurse Clark were alerted to his ankle injury until he was finally seen by medical, during which time he experienced "severe chronic pain." [ECF No. 1 at 3 ¶ 10, 4 ¶ 14]. He asserts that seven days passed between the time he alerted Sergeant Borrow and more than twenty-four hours passed between the time he alerted C.O. Schwartz and when he finally received medical attention. [*Id*. at 5 ¶ 16, 6 ¶. 21].

"Even when medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." *Nam Dang*, 871 F.3d at 1280 (citations omitted). "Further, 'medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.'" *Id*. (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)). Accordingly, Eighth Amendment claims may still proceed in situations

where a delay in treatment caused the inmate unnecessary pain, even when the injury was not life threatening or the delay lacked long-term consequences. *See Harris*, 21 F.3d at 393–94.

Taking Plaintiff's allegations as true, he has pleaded a plausible claim against Sergeant Brown, Nurse Clark, Sergeant Borrow and C.O. Schwartz for deliberate indifference to his medical needs.

### B. Defendant C.O. Fanning

Plaintiff has failed to show that C.O. Fanning disregarded his injury by more than mere negligence. "Where a prisoner has received ... medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Boone v. Gaxiola*, 665 F. App'x 772, 774 (11th Cir. 2016) (quoting *Hamm*, 774 F.2d at 1575) (alteration in original).

Here, C.O. Fanning provided Plaintiff with medical treatment when, on May 12, 2020, he gave him two tablets of "200 mg ibuprofen." [ECF No. 1 at 5 ¶ 17]. Although C.O. Fanning did not take Plaintiff to medical, this at most may constitute negligence, which does not amount to a viable claim for a violation of Plaintiff's constitutional rights. Further, on May 10, 2020, C.O. Fanning observed Plaintiff attempting to stop Nurse Clark and called him back to Plaintiff's cell. [*Id*. at 4 ¶ 13]. Nurse Clark and C.O. Fanning stated they would be back later to take Plaintiff to medical. [*Id.*]. Although, Plaintiff was not taken to medical that day, based on Plaintiff's allegations, this failure to take Plaintiff to medical cannot directly be attributed to C.O. Fanning because her shift ended at 7:00 p.m., and it was Nurse Clark who failed to report Plaintiff's injury. [*Id*. ¶ 14]. Accordingly, even if C.O. Fanning's actions or inactions were negligent, "an inadvertent failure to provide adequate medical care does not constitute 'unnecessary and wanton infliction of pain,' a prisoner's complaint 'that a physician has been negligent in diagnosing or treating a

10

medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'" *Faison v. Rosado*, 129 F. App'x 490, 492 (11th Cir. 2005) (quoting *Estelle*, 429 U.S. at 105–06).

Therefore, Plaintiff has failed to plead a plausible claim against C.O. Fanning for deliberate indifference to his medical needs.

3) Fourteenth Amendment Due Process Violation

Plaintiff alleges that C.O. Schwartz's "withholding medical care from Plaintiff as punishment for the fishing incident without any hearing violated [his] right to due process of law." Plaintiff's claim that C.O. Schwartz withheld medical treatment "as punishment" is not supported by his allegations. Plaintiff alleges only that C.O. Schwartz instructed him that "fishing's against the rules" and that then failed to provide him with medical care. Plaintiff would have no right to a due process hearing under these circumstances. Plaintiff's allegations fall within the purview of an Eighth Amendment deliberate indifference claim, and not a Fourteenth Amendment Due Process violation. In any event, the Undersigned has already recommended that Plaintiff's deliberate indifference claim proceed against C.O. Schwartz.

Therefore, Plaintiff has failed to plead a plausible claim against C.O. Schwartz for a violation of his Due Process violation under the Fourteenth Amendment.

V. Punitive Damages Claim

Plaintiff seeks punitive damages against all Defendants. [ECF No. 1 at 7]. Punitive damages may be awarded under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "While the *Smith* Court determined that it was unnecessary to show actual malice to qualify for a punitive award, . . . its

intent standard, at a minimum, required recklessness in its subjective form." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999). *Smith* refers to a "subjective consciousness" of a risk of injury or illegality and a "criminal indifference to civil obligations." *Id*. (quoting *Smith*, 461 U.S. at 37 n.6)).

At this early juncture, since it cannot be determined whether punitive damages should be awarded against Sergeant Brown, Nurse Clark, Sergeant Borrow and C.O. Schwartz arising from the facts alleged, the punitive damages claims should proceed against these Defendants.

### VI. Recommendations

Based upon the foregoing, it is **RECOMMENDED** that Plaintiff's Complaint [ECF No. 1] (1) **PROCEED** against Defendants Sergeant Brown, Sergeant Borrow, C.O. Schwartz, and Nurse Clark in their individual capacities for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment; and (2) be **DISMISSED** against C.O. Fanning pursuant to § 1915(e)(2)(B)(ii).

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Judge within **FOURTEEN DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**SIGNED** this 9th day of February, 2021.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **Justin W. Settle**
V08109
Florida State Prison-West Unit
PO Box 800
Raiford, FL 32083
PRO SE